# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 19-1332V

| | |
|---|---|
| TERRY PETTY,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br><br>Filed: September 24, 2024 |

*David J. Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.

*Camille J. Webster*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CASE**[1]

On August 30, 2019, Terry Petty filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine received on September 13, 2016, he suffered a shoulder injury related to vaccine administration ("SIRVA") a Vaccine Table injury. Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find that the evidence preponderates against the conclusion that the vaccination at issue caused any reduced range of motion,

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

meaning Petitioner's Table claim is not viable. Petitioner will, however, be given an opportunity to establish an "off-Table" claim, based on the same facts.

I. **Relevant Procedural History**

The claim was initiated on August 30, 2019, and the relevant medical records were filed on September 3, 2019. ECF Nos. 1, 5. Between June and December 2020, Respondent filed two status reports requesting additional time to review the case and prepare his position. ECF Nos. 12 – 13. On December 15, 2020, Respondent filed a status report requesting 45 days to file his Rule 4(c) report and notified Court he was not interested in proceeding in settlement negotiations. ECF No. 14.

On February 4, 2021, Respondent filed his Rule 4(c) Report contesting entitlement based on the argument that Petitioner failed to demonstrate that his shoulder pain began within 48 hours of vaccination, and that Petitioner had not met the severity requirement of the Vaccine Act. Respondent's Report at 5-6. ECF No. 15.

In response, Petitioner filed a Motion for a Ruling on the Record on February 13, 2023, arguing that he had met the severity requirement and otherwise established entitlement to compensation for a SIRVA Table Injury. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."), ECF No. 18. Petitioner also requested an award of $60,000.00 for past and future pain and suffering. Id. at 20.

Respondent opposed the motion on March 31, 2023, reiterating the arguments set forth in the Rule 4(c) Report, that Petitioner did not meet the requirements to prove he suffered a SIRVA within 48 hours and suffered residual effects for more than six months after vaccination. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 19 at 7. Petitioner filed his reply on April 6, 2023. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 20. The matter is ripe for resolution.

II. **Relevant Medical History**

1. **Medical Records**

Mr. Petty, (a 63-year-old man employed as a district manager for a retail company at the time of his vaccination) received a flu vaccine in his left shoulder on September 13, 2016, at Fred's Pharmacy located in Tupelo, Michigan. Ex. 1. Petitioner's medical records show he had no history of left shoulder pain or injury.

On October 17, 2016 (34 days after vaccination), Mr. Petty presented to his primary care provider ("PCP"), Dr. Brett Oakley Brown, with a complaint of "left arm pain with decreased function since [he] received [a] flu shot on 9/13/2016". Ex. 3 at 117. Dr. Brown diagnosed Mr. Petty with "frozen shoulder" and referred Petitioner to an orthopedist. *Id.*

The next day, October 18, 2016, Mr. Petty had his first appointment with orthopedist Dr. Gordon Jones. Ex. 4 at 7. Dr. Jones performed a physical exam noting that Mr. Petty had "full range of motion with pain, with initiation of motion" and assessed "rotator cuff tendinitis, left." *Id.* at 19, 20. Mr. Petty reported to Dr. Jones that he believed that his pain started after the vaccination he had received in September. Dr. Jones ordered x-rays, prescribed a Medrol-Dosepak, physical therapy, and requested that Mr. Petty return in one month for a follow-up appointment. *Id.* at 20.

Mr. Petty had three appointments with his PCP between January and May 2017, regarding respiratory, sinus issues, and a wellness appointment. Ex. 3 at 123 – 157. Mr. Perry did not report any shoulder pain at any of these visits. *Id.*

On August 11, 2017, Mr. Petty had an appointment with Dr. Jones for right prepatellar bursitis. Ex. 4 at 24. Dr. Jones preformed an aspiration of Mr. Petty's right knee. *Id.* Mr. Perry did not discuss any pain in his shoulder during the appointment.

On August 28, 2017, Petitioner received another flu vaccine. Ex. 3. at 35. It is not clear which shoulder this flu shot was administered in or where Petitioner received it.

On November 21, 2017, Mr. Petty returned to Dr. Jones for a second evaluation of his left shoulder. Ex. 4 at 28. Dr. Jones performed a physical exam and noted that Mr. Petty "show[ed] full range of motion, pain with maximum flexion and abduction". *Id.* at 29. Dr. Jones notes that the rotator cuff is "weak" and tender with supraspinatus and infraspinatus testing. *Id.* Dr. Jones ordered an MRI and instructed that Mr. Petty follow up for further evaluation. *Id.* Petitioner underwent the MRI the same day. *Id.* at 30.

Mr. Petty met with Dr. Jones on November 28, 2017, to discuss the results of his MRI. Ex. 4 at 31. Dr. Jones reported that the MRI "show[ed] an anterior edge supraspinatus full thickness tear." *Id.* He recommended that Mr. Petty undergo an "arthroscopy and rotator cuff repair with extensive debridement". *Id.* Mr. Petty stated that he would be starting a new job and wanted to wait for some time before proceeding with possible surgery. *Id.*

All medical records pertaining to Petitioner's shoulder injury have been filed as of September 3, 2019. Statement of Completion, ECF No. 6.

### 2. Affidavit Evidence

Mr. Petty submitted an affidavit, dated September 3, 2019, in which he stated that he had pain in his left shoulder within 24 hours of receiving the relevant vaccination. Ex. 2 at 2. He stated that he "was hoping my shoulder pain would eventually resolve, but over the course of the next month, I continued to have severe pain and decreased range of motion in my shoulder." *Id.* at 2. Over a month later, Mr. Petty "eventually" saw his PCP, Dr. Brown, for his shoulder pain and was referred to orthopedist Dr. Jones. Dr. Jones prescribed a Medrol-Dosepak, physical therapy, and recommended an MRI and a follow up visit the next month.

Mr. Petty described that "[d]uring the next several months, my severe pain and decreased range of motion continued, along with the sleepless nights due to the shoulder pain. I didn't realize how severe my shoulder injury was until I went back to the orthopedic in late 2017 and received an MRI." Ex. 2 at 3.

Ultimately, Mr. Petty explained that he "decided to hold off on any surgical options because I recently lost my job of 40 years and was in the process of locating another job. I continued to do physical therapy exercises on my own consisting of stretching and light exercises … I was laid off in November 2017 because I was constantly in pain and could not utilize both of my shoulders effectively. As a result, my job performance slipped, leading to my termination." *Id.* at 4.

### III.   Parties' Respective Arguments

Petitioner argues that the medical records and affidavit clearly demonstrate that he suffered a SIRVA injury following receipt of the flu vaccine on September 13, 2016. He maintains that onset of his symptoms began within 48 hours of vaccination, that he experienced associated decreased range of motion, and that his symptoms persisted for longer than six months. Mot. at 1-2. Respondent has argued in reaction that Petitioner's claim fails because Petitioner fails to show by a preponderance of evidence that the onset of his shoulder pain occurred within 48 hours of vaccination, and that the submitted evidence does not reflect Petitioner suffered any range of motion loss, or that Petitioner's alleged injury lasted for longer than six months. Response at 5-7.

4

## IV. <u>Applicable Law</u>

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined.

*Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V. Analysis

The record preponderates against the finding that Petitioner experienced the required ROM limitations to meet that element of a Table SIRVA. As I have previously explained, limited ROM is a QAI requirement for a Table SIRVA, along with evidence of pain. *Bolick v. Sec'y of Health & Hum. Servs.*, No. 20-893V, 2023 WL 8187307, at *7-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023). ROM need not be shown to have *begun* within 48-hours of vaccination (as with pain), but there must be some post-vaccination record of ROM limitations - and the ROM requirement is specific to actual, demonstrated *movement limitations*. *McNally v. Sec'y of Health & Hum. Servs.*, No., 2024 WL 4024429, at *4 (Fed. Cl. Spec. Mstr. Jul. 31, 2024). Thus, a *reluctance* to move one's arm or shoulder due to pain is not equivalent.

The record reflects that Petitioner only sought medical attention four times for his alleged injury. The first is when he visited his PCP, Dr. Brown, at Baptist Medical Group on October 17, 2016. The records from this visit indicate a complaint of "left arm pain with decreased function since [sic] received a flu shot on 9/13/16. Was having no problems with arm prior to injection." Ex. 3 at 117. This record does not contain any mention of ROM issues or indication that Dr. Brown conducted a ROM test on Petitioner (although it could be generously interpreted to suggest an ROM issue, in its reference to "decreased function").

The next visit was on October 18, 2016, with Petitioner saw Dr. Jones at Columbus Orthopedic Clinic. Dr. Jones' impression was as follows: "Physical exam shows *full range of motion* with pain with initiation of motion. He has no restriction of internal or external rotation. His rotator cuff strength is 5/5." Ex. 4 at 20 (emphasis added). Next, on November 21, 2017, Petitioner returned to Dr. Jones. Once again, Dr. Jones noted that the "physical exam today shows *full range of motion*, pain with maximum flexion and abduction." *Id.* at 29 (emphasis added). Such records thus reflect that every time one of Petitioner's treating physicians tested him for range of motion, he exhibited full range of motion. Finally, Petitioner returned to Dr. Jones on November 28, 2017, to discuss the findings of his MRI. *Id.* at 32. These records do not reflect any discussion concerning ROM.

Petitioner argues that the records reflect that he exhibited a decreased range of motion. Petitioner notes that "on October 18, 2016, Dr. Jones observed that Petitioner's range of motion was associated 'with range of initiation of motion', that on August 11, 2017, Petitioner's range of motion 'with pain and tenderness in the prepatellar bursa' was documented." Motion at 10. However, the noted ROM with pain and tenderness was exhibited in Petitioner's prepatellar bursa, not his left deltoid. Ex. 4 at 24. Additionally, Petitioner cites his November 21, 2017, assessment by Dr. Jones, emphasizing the notation that Petitioner "has pain with use especially abduction and reaching forward consistent with pain in his rotator cuff." Reply at 2 (citing Ex. 4 at 29). This does not support a finding of limited ROM, as Petitioner seems to suggest, because the Table ROM requirement involves proof of actual limitation.

In the instant case, although the records reflect that Petitioner had pain with motion of his left shoulder, none of the records reflect a demonstrated reduction of ROM in the left shoulder. Indeed, the opposite is the case - as all the available records reflect that Petitioner exhibited full ROM in his left shoulder despite pain upon motion. I note that Petitioner has submitted an affidavit in which he alleges reduced range of motion from the onset of his alleged injury. Ex. 2 ¶ 10. However, this contention is directly contradicted by the contemporaneous medical records that Petitioner has submitted, which show full ROM, despite two separate visits that were approximately 11 months apart. Accordingly, Petitioner has failed to show that he suffered loss of ROM from his alleged SIRVA, and therefore his Table claim must fail.

## Conclusion

Petitioner has not provided preponderant evidence to establish that he suffered limited range of motion as required to establish a Table SIRVA case. Accordingly, Petitioner's Table SIRVA claim is dismissed. Pursuant to Vaccine Rule 3(d), I will issue a

separate Order reassigning this case out of SPU for the resolution of whether Petitioner suffered an Off-Table injury.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master